# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERNDIVISION

| | |
|---|---|
| KAKIESHA JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14-CV-00169 JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Kakiesha Jones' ("Jones") application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.

### I. Background

On November 3, 2010, Jones filed her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. (Tr. 121-126) The Social Security Administration ("SSA") denied Jones' application on April 13, 2011. (Tr. 53-59) She filed a timely request for a hearing before an administrative law judge ("ALJ") on May 11, 2011. (Tr. 62-64) Following a hearing, the ALJ issued a written decision on September 28, 2012, upholding the denial of benefits. (Tr. 7-27) Jones requested review of the ALJ's decision by the Appeals Council. (Tr. 6) On December 20, 2013, the Appeals Council denied Jones' request for review. (Tr. 1-5) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Jones filed this appeal on January 29, 2014. (Doc. 1) The Commissioner filed an Answer. (Doc. 10) Jones filed a Brief in Support of her Complaint. (Doc. 17) The Commissioner filed a Brief in Support of the Answer. (Doc. 21) Jones filed a Reply Brief. (Doc. 22)

## II. Decision of the ALJ

As a preliminary matter the ALJ denied Jones' counsel's request to include Jones' previous SSI children's benefits file in the record. The ALJ found that because "the application before the undersigned is not a cessation of child's benefits case, I will only consider those exhibits that address the relevant time period and are pertinent to the claimant's current application as an adult." (Tr. 10) This decision and any records addressing the prior file will be discussed in more detail below.

The ALJ determined that Jones has not engaged in substantial gainful activity since November 3, 2010, the application date. (Tr. 12) The ALJ found Jones has the severe impairments of borderline intellectual functioning/mild mental retardation, depressive disorder, and posttraumatic stress disorder but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

After considering the entire record, the ALJ determined Jones has the residual functional capacity ("RFC") to perform medium work, except that, due to a mental impairment, she is limited to unskilled work. (Tr. 14) Further, she should not perform work that includes more than infrequent handling of customer complaints. (Id.) The ALJ found Jones able to perform the past relevant work as a fast food worker, Dictionary of Occupational Titles ("DOT") code 311.472-010, a specific vocational preparation ("SVP") of 2, light. (Tr. 20) Thus, the ALJ concluded that

2

a finding of "not disabled" was appropriate. (Tr. 22) Jones appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

The ALJ held a hearing in this matter on August 30, 2012. The ALJ heard testimony from Jones and Teresa A. McClain, a vocational expert. (Tr. 28-49)

##### 1. Oral Motion for Jones' Prior File

At the hearing, prior to any testimony, Jones' counsel indicated that the exhibits were missing information about the grounds for Jones' prior SSI children's benefit allowance. Specifically, "The Exhibit 2E, page one, does indicate that on November 8th, 2007, claimant was approved for SSI benefits, but nowhere else in the file does it indicate why or why the benefits stopped." (Tr. 31) The ALJ thereafter disclaimed responsibility for the file, stating "So, counsel, the record is your responsibility." (Id.) To which counsel replied that this part of the file was not his responsibility and that he believed the ALJ had access to the file. (Id.) The ALJ indicated that the file needed to be requested prior to the hearing. (Id.) Jones' counsel replied that it was normal practice for the file to be exhibited at the hearing office but that he was not aware which judge was assigned to the case. (Id.) The ALJ responded that counsel should have made a generalized request, that she did not have access to that information, and that he should put his request in writing. (Tr. 32) The hearing then proceeded with Jones' testimony.

##### 2. Jones' testimony

At the time of the hearing, Jones was living alone with her daughter. (Tr. 33) When asked the age of her daughter, she could not remember but guessed that she was maybe five or six

3

months. (Id.) She does not remember how she met the father of her child. (Tr. 44) Her godmother, Ms. Cheryl Wilson, lives in the same apartment complex. (Tr. 42) Ms. Wilson is over every day. (Id.) Ms. Wilson sometimes takes Jones' daughter for the weekend. (Id.)

Jones has a 12th grade education. (Tr. 34) She needed help in high school with her classes. (Tr. 35) When asked whether she had taken classes over the computer or by correspondence, she responded that she did not know what that means. (Tr. 34) She is currently in school. (Tr. 35) When asked what she was taking, she responded that she was working with kids. (Id.) The ALJ followed-up with "So is this a daycare provider training?" And she responded in the affirmative. (Id.) She indicated that she was getting tutoring and help with completing her classes because she had difficulty understanding. (Id.) She was unsure about how many more classes she had to complete the degree. (Id.)

Jones does not have a computer. (Tr. 43) She does not read. (Id.) She watches some TV but does not know what's going on. (Id.) She does not listen to music because she does not like loud noises. (Id.) She does not belong to any clubs or organizations. (Id.) She goes to church every week with her godmother. (Id.) She does not participate in any church activities. (Id.) She is "not a people person" and she does not like being around people. (Id.)

She had not done any babysitting or elder care either in her home or the home of another person for payment. (Tr. 36) She has not ever received unemployment benefits. (Id.) She has never been in prison or jail. (Id.) She does not have any DUIs or DWIs. (Id.) She has not been through detox or rehab either as an inpatient or outpatient for alcohol, drugs, or both. (Id.)

Jones' counsel indicated Jones' health problems are major depressive disorder, recurrent posttraumatic stress disorder, borderline intellectual functioning, and personality disorder. (Tr. 37) She sees psychiatrist Dr. Gangerry at BJC Behavioral Health. (Tr. 36-37) She also has a

4

caseworker, Ms. Latonia Mackey, that helps her. (Tr. 37) Ms. Mackey comes by almost every day. (Tr. 40) The caseworker helps Jones to go grocery shopping and pay bills. (Tr. 38) Jones does not know math, does not know about money or how to count. (Id.) Jones does not pay her own bills. (Tr. 40) The caseworker also helps Jones with dressing herself and keeping her house clean; "she basically like helps me like with everything." (Tr. 38) The caseworker drove Jones to her hearing. (Id.) Jones does not have a driver's license. (Id.) She does not use the bus to get anywhere. (Tr. 40) Jones' caseworker takes Jones to her doctor's appointments. (Id.)

A nurse, Ms. Fannie, teaches Jones how to take care of and feed her daughter. (Tr. 39) Ms. Fannie comes to her home once a week. (Id.) Also Jones' daughter's grandmother helps her too. (Id.) Jones does not know how to work a phone. (Id.)

On a typical day, Jones is tired all the time and does not have any energy. (Tr. 41) She naps during the day. (Id.)

## 2. Testimony of Vocational Expert

Vocational expert, Teresa A. McClain, testified regarding Jones' vocational history as follows. Jones has been a fast-food worker, code 311.472.010, with a specific vocational preparation ("SVP") of 2 and classified by the Dictionary of Occupational Titles ("DOT") as light work. (Tr. 46) No other work was indicated.

For hypothetical one, the ALJ asked McClain to assume a person with the same age, education, and work experience as Jones capable of performing medium work with the following limitations: medium exertional work, unskilled work, and work with infrequent handling of customer complaints. (Id.) McClain did not address whether Jones could return to her previous work. She did say that such a person would also be able to perform other jobs such as linen room attendant, code 222.387-030, SVP 2, the work level was not discussed. (Tr. 47) There are 10,500

5

such positions locally and 1.2 million nationally. (Id.) In addition, such a person could perform the job of laundry worker I, code 361.684-014, SVP 2, work level not discussed. There are 1,540 such positions locally and 147,000 nationally. (Id.) Further, such a person could perform the job of assemblers, small products, code 706.684-022, SVP 2, work level not discussed. (Id.) There are 6,890 such positions locally and 229,000 nationally. (Id.)

Jones' attorney then asked McClain to provide the general educational development reasoning skills number for all of the positions just indicated. (Id.) McClain testified that the reasoning level for the linen room position is a 3. (Tr. 48) The reasoning level for the laundry work position is a 2. (Id.) The assembler is a 2. (Id.)

### B. Records Regarding the Prior File

Following the hearing, Jones' counsel sent the ALJ a letter reiterating his request that the ALJ obtain and include as an exhibit Jones' prior file. (Tr. 189) In this letter, her counsel additionally states the following:

> When the claimant applied for SSI benefits on 12/13/2010, she alleged an onset date of disability of 4/7/2005. Exhibit 2E-1 notes that the claimant was approved for SSI on 11/8/2007. The claimant is not currently in receipt of SSI. Depending on when the prior eligibility ceased and why, the claimant's 12/13/2010 application may have been an implied request to reopen a prior unfavorable determination if it was issued within the prior two years. The claimant alleges disability based upon long-term psychiatric and intellectual deficits for which a longitudinal history must be analyzed. Nevertheless, the SSA at the initial application stage did not obtain the prior file . . ., and ODAR has now repeated the error by preparing the file for hearing on the issue of disability since 2005 without having done so. Contrary to your assertion in the hearing, the claimant does not have a burden of production of evidence that is in the sole possession of the SSA.

(Tr. 189). Exhibit 2E is a Disability Report dated December 15, 2010. (Tr. 143-145) On the first page of the report, it indicates that there was a prior filing and that the prior folder was not requested. (Tr. 143) On September 7, 2012, a clerk from the ALJ's office left a message for Jones' counsel that "we are not going to obtain prior file." (Tr. 190) Subsequently, on September

6

10, 2012, her counsel sent a letter to Ms. Patti Hoag, Hearing Office Director at the Office of Disability Adjudication and Review in Creve Coeur, requesting the prior file pursuant to the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information Act (FOIA), 5 U.S.C. § 552. (Tr. 191-192) Jones' counsel notes, "The current file being considered by Judge Pappenfus fails to document the nature of the prior eligibility and cessation, although the claimant may or may not have reapplied for benefits within a period of possible reopening of the prior cessation, and has alleged an onset date of disability that invades the period of the prior eligibility." (Tr. 191)

As previously indicated, the ALJ denied Jones' counsel's request in her written opinion. (Tr. 10)

### C. Medical Records

The ALJ summarized Jones' medical records at Tr. 18-20. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f),

8

416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. The Commissioner may refer to the Medical-Vocational Guidelines or "Grids," 20 CFR Part 404, Subpart P, Appendix 2,[1] to meet this burden. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court

---

[1] The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir. 2012). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." Id. (quoting Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)).

9

may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

    (1) The findings of credibility made by the ALJ;

    (2) The education, background, work history, and age of the claimant;

    (3) The medical evidence given by the claimant's treating physicians;

    (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

    (5) The corroboration by third parties of the claimant's physical impairment;

    (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

    (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In her appeal of the Commissioner's decision, Jones raises three issues. First, Jones asserts that the ALJ erred in determining RFC by improperly analyzing Jones' impairments, by making findings inconsistent with the ALJ's own step two and step three findings, by failing to properly analyze and weigh the opinion of Dr. Gangure, and by failing to consider evidence from Jones' prior file. (Doc. 17 at 10-16) Second, Jones argues that the Commissioner erred in failing to sufficiently consider new and material evidence presented to the Appeals Council that must be considered under the regulations, including additional mental health treatment records documenting severe mental limitations and supporting additional limitations. (Id. at 16-17) Third, Jones asserts that the ALJ erred in conducting a perfunctory credibility analysis in contravention of applicable cases, as well as an insufficient analysis of past work. (Id. at 18-19)

10

Because the ALJ erred in failing to provide Jones' prior file to her counsel and in failing to fully develop the record regarding Jones' prior established disability, the Court will only address that issue.

The record indicates that Jones' previously received SSI children's disability benefits beginning on November 8, 2007 which subsequently ceased. (Tr. 10) During the hearing, Jones' counsel indicated that the exhibits were missing information about the grounds for Jones' prior allowance and the reason for cessation. (Tr. 31) Specifically, "The Exhibit 2E, page one, does indicate that on November 8th, 2007, claimant was approved for SSI benefits, but nowhere else in the file does it indicate why or why the benefits stopped." (Id.) The ALJ responded directing counsel to put his request in writing. (Tr. 32) Following the hearing, Jones' counsel sent the ALJ a letter repeating his motion that the ALJ obtain and exhibit the claimant's prior file. (Tr. 189) Jones' counsel also submitted a FOIA request to the Hearing Office Director. (Tr. 191-192)

The ALJ denied her counsel's request stating:

> The claimant's alleged onset date of disability is April 7, 2005. The claimant was previously entitled to Supplemental Security Income as a disabled child. When a child attains age 18, a disability redetermination is done using the adult disability rules. The standards for entitlement are different. The current issue to be considered is whether the claimant can be found eligible for the Supplemental Security Income using the adult standards, as the claimant was age 21 at the time the application was filed.
>
> At the August 30, 2012 hearing and after the hearing in a document dated September 10, 2012, the claimant's attorney requested that the claimant's prior child's file with its exhibits be added to the claimant's current file as an adult. In the prior application, the claimant was found disabled as of November 8, 2007. The claimant's prior benefits as a child were subsequently ceased. As the application before the undersigned is not a cessation of child's benefits case, I will only consider those exhibits that address the relevant time period and are pertinent to the claimant's current application as an adult. The request by claimant's attorney is denied.

(Tr. 10)

11

Jones asserts that the ALJ did not sufficiently consider relevant evidence from her prior file, especially any information regarding her borderline intellectual functioning. (Doc. 17 at 14) Jones also argues that the prior findings of disability may constitute admissions or binding determinations by the Commissioner regarding certain issues. (Id.)

The Commissioner responds asserting that the ALJ in this case did not reopen Plaintiff's prior claim and that the Court does not have the authority to review a decision denying a petition to reopen a prior claim. (Doc. 21 at 1 n.1) Therefore, proceeding as an adult SSI claim, the Commissioner argues that Jones' onset date would be the date of her application and thus the relevant time period at issue would be from that date, November 3, 2010, to the date of the hearing, September 28, 2012. (Id.) Citing 20 C.F.R. § 416.912(d) for the proposition that an ALJ need only review records from the 12 months preceding an application, the Commissioner asserts the records in the prior file are outside this 12 month window and are consequently not relevant. (Id.)

In her reply, Jones' asserts that the Commissioner has misstated the law, that 20 C.F.R. §416.912(d) requires the ALJ to obtain medical records for *at least* the 12 months preceding the application. (Doc. 22 at 5-6) (emphasis in original) (internal quotation omitted). Jones further argues that this point is not relevant as she is not bringing concerns regarding what evidence Defendant has an affirmative obligation to obtain when a claim is filed but, instead, is asserting that the evidence is already in Defendant's possession and the finding made by Defendant must be considered by an ALJ. (Id. at 6) Jones also argues that the information in the prior file is relevant to Jones' severe impairment of borderline intellectual functioning because the listing for intellectual disability, 12.05, requires an analysis of longitudinal evidence. (Id.)

12

It is not evident from the record whether Jones' prior award of SSI was based on an intellectual disability, what relationship it may have to the current claim, or the reason for the cessation of benefits. The missing information is necessary to develop the record to ensure that Jones had a full and fair hearing. As Jones correctly notes, listing 12.05 defines intellectual disability as follows:

> Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Although the ALJ had before her Jones' high school records (Tr. 195-221, 234-250), "[t]he existence of a prior established disability is highly relevant when the nature of that disability appears to be the very same cause of the alleged disability then under examination." Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (finding the ALJ failed to provide claimant a full and fair hearing when the ALJ did not ask any questions of claimant about his prior disability and its relationship to the current claim). Despite the attempts of counsel, the issue of the prior award was similarly left unexplored in this case when the ALJ denied counsel's request to include the prior file in the record. The file appears especially relevant here given Jones' claim of an intellectual disability, a traditionally static condition. Therefore, the Court finds Jones was deprived of a full and fair hearing by the ALJ's failure to fully develop the record regarding Jones' prior established disability.

The Court also finds that Jones was prejudiced when the Commissioner failed to provide her counsel with a copy of her prior file both because the prior file may have a bearing on the way her counsel litigates this action and may also impact the very nature of this action. Jones' counsel asserts that "[t]he prior findings of disability would be relevant and may constitute admissions and/or binding determinations by the Commissioner regarding certain issues." (Doc.

13

17 at 14) "A decision by the Secretary which has become final is res judicata as to subsequent applications involving the same facts and issues existing at the time of the first decision." Janka v. Sec'y of Health, Ed. & Welfare, 589 F.2d 365, 367 (8th Cir. 1978). Findings made by an ALJ following a hearing are binding on the parties, including the Commissioner, in any subsequent proceeding. 42 U.S.C. § 405(h). See also Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 842 (6th Cir. 1997) ("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.") Therefore, without the benefit of the prior file, Jones' counsel was not afforded the opportunity to use previous findings that may constitute admissions or binding determinations by the Commissioner regarding certain issues.

The Court also finds significant the issue that counsel raises in his letters to the ALJ as well as to the Hearing Office Director that, depending on the nature of the prior eligibility and cessation, the 12/13/2010 application may be an implied request to reopen a prior unfavorable determination. (*See* Tr. 189, 191) An SSI determination may be reopened within 1 year from the date of the initial determination for any reason, within 2 years from the date of notice of the initial determination for "good cause" or at any time for fraud or similar fault. Social Security Administration (SSA) Program Operations Manual System (POMS) DI 27505.001 (Oct. 2011). Good cause for reopening a prior determination exists when: (1) new and material evidence is furnished; (2) the evidence that was considered in making the determination or decision clearly shows on its fact that an error was made; or (3) there was a clerical error in the computation or re-computation. 20 C.F.R. § 416.1489; SSA, POMS DI 27505.010 (June 2008). When an individual receives benefits as a child, a redetermination of benefits occurs, as indicated by the ALJ, when the child turns 18. 20 C.F.R. § 416.987. Contrary to the assertion of the Commissioner, the Court does not construe the ALJ's denial of Jones' counsel's motion to

14

include the prior file in the record as a denial of a petition to reopen a prior final decision. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977) (finding the Commissioner's decision to deny claimant's petition to reopen a discretionary decision, not reviewable by the District Court absent a constitutional challenge). However, without the benefit of the file, Jones' counsel cannot determine if he should assert that the current application is an implied petition to reopen the prior decision.

Therefore because the Court finds that the ALJ's failure to provide Jones or her counsel a copy of her prior file or to make it a part of the record was unfair and prejudicial, the Court will reverse and remand this case. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.")

## VI.   Conclusion

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to provide Jones' counsel with a copy of Jones' prior file; add the file to the record; further develop the medical record if necessary; offer Jones the opportunity for a hearing; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 31st day of March, 2015.

15

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**